UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERMINALIFT LLC,<br><br>                 Plaintiff,<br><br>  v.<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION<br>LOCAL 29,<br><br>                 Defendant. | CASE NO: 11-CV-1999 W (WVG)<br><br>**ORDER GRANTING IN PART &<br>DENYING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS THE FIRST AND<br>THIRD CAUSES OF ACTION<br>WITHOUT LEAVE TO AMEND<br>[DOC. 36]** |

      Pending before the Court is Defendant International Longshore and Warehouse Union Local 29's ("Local 29") motion to dismiss Plaintiff Terminalift LLC's first and third claims for relief in the Second Amended Complaint ("SAC" [Doc. 30]). Terminalift opposes.

      The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion without leave to amend [Doc. 36].

I.  **BACKGROUND**

Plaintiff Terminalift is in the business of moving cargo on and off ocean-going ships and littoral vessels at the Port of San Diego (the "Port"). (SAC, ¶9.) It owns specialized material-handling equipment to offload fragile and vibration sensitive heavy cargo for foreign and domestic businesses, such as 70-foot windmill blades. (*Id.*, ¶ 10.) Terminalift is the only company that owns such specialized equipment for this purpose at the Port. (*Id.*)

Defendant Local 29 is a labor organization whose members are employed by International Longshore and Warehouse Union signatory stevedore contractors at the Port. (SAC, ¶ 4.) SSA Marine is one of the signatory contractors. (*Id.*, ¶ 23.)

In March 2011, Terminalift entered into a contract with Scientific Applications International Corporation ("SAIC") to, among other things, load and unload scientific equipment at the Port. (SAC, ¶ 17.) On April 12, 2011, Terminalift was performing work for SAIC alongside the Motor Vessel Ocean Pioneer (the "Ocean Pioneer"). (*Id.*, ¶ 19.) The ship was being operated by Stabbert Maritime.

At approximately 10:00 a.m., about 150 Local 29 members picketed with signs stating, "Get Off Our Port," and surrounded the employees of Terminalift, SAIC, Stabbert and the Ocean Pioneer, and intimidated the employees to stop working. (SAC, ¶ 19a, e.) Local 29 members then blocked employees' ingress and egress to the ship, and sat on SAIC's cargo and Terminalift's material-handling equipment. (*Id.*, ¶ 19b, f.) Members also boarded the Ocean Pioneer without authorization, and intimidated the captain into stopping Terminalift's work. (*Id.*, ¶ 19c.)

Eventually, the San Diego Harbor Police was called. (SAC, ¶ 20.) Then at approximately 1:00 p.m., the Port and Local 29 representatives set-up a meeting with the Ocean Pioneer's captain and SAIC. (*Id.*, ¶ 21.) Local 29 told representatives of SAIC, Stabbert Maritime and the Port that it would not permit SAIC's cargo to be loaded and shipped unless SAIC reassigned the cargo handling work to a signatory contractor, thereby avoiding extra demurrage and detention charges of about $50,000

per day. (*Id.*)  As a result, SAIC hired SSA Marine to complete the cargo transfer work on the Ocean Pioneer, thereby breaching the contract with Terminalift.[1]  (*Id.*, ¶ 23.)

The SAC further alleges that "SSA Marine agreed with [Local 29] in or about June 2011 that only union signatory contractors" would perform Terminalift's work on windmill components.  (*SAC*, ¶ 25.)  SSA Marine, thereafter, allegedly notified Terminalift's windmill-related customers that they must use union labor for cargo services or there will continue to be "disruptions discharging all their windmill components at the Port . . . ."  (*Id.*)  As a result, GE Energy, Gamesa Corporacion Tecnologica ("GAMESA"), Repower USA Corp., and Mitsubishi Power Systems Americas, Inc., have ceased doing business with Terminalift.  (*Id.*, ¶ 25.)

Finally, the SAC also alleges that Local 29 entered into an agreement with the Port to bar Terminalift from performing work for the America's Cup Yacht Race that was held in San Diego in November 2011.  (*SAC*, ¶ 26.)  According to Terminalift, beginning in September 2011, the Port held meetings to discuss the logistical plan to hold the race.  (*Id.*, ¶ 26.)  As a result of the meetings, on October 13, 2011, America's Cup representatives were notified during a meeting with the Port and Local 29 that they were barred from considering Terminalift for cargo loadout and relaod, and were to only use union labor for the cargo and stevedoring services.  (*Id.*)

In July 2011, Terminalift filed this lawsuit in the San Diego Superior Court.  Local 29 then removed the case to this Court based on federal-question jurisdiction.  On November 28, 2011, Terminalift filed the FAC asserting, among other claims, violation of the Sherman Act.  Local 29 then moved to dismiss the Sherman Act claims, which the Court granted with leave to amend.  (*See Dismissal Order* [Doc. 29].)  Terminalift thereafter filed the SAC.  Local 29 now seeks to dismiss the first and third claims for relief.

//

---

[1] The SAC does not allege that SSA Marine attended the meeting.  (*See SAC*, ¶ 21.)

## II. MOTION TO DISMISS STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. <u>Balisteri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." <u>Vasquez v. L.A. Cnty.</u>, 487 F.3d 1246, 1249 (9th Cir. 2007).

Complaints must contain "a short plain statement of the claim showing the that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. <u>Papasan v. Allain</u>, 478 U.S. 265, 286, (1986); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

## III. DISCUSSION

Local 29 seeks to dismiss Terminalift's first and third claims for relief. The first claim is for Violation of the Sherman Antitrust Act - Conspiracy to Monopolize. The third claim is for Violation of the Sherman Act - Attempted Monopolization. Both claims are premised on the contention that Local 29 entered into an agreement,

1 combination or conspiracy to restrain trade or attempt to monopolize the market. (*See*
2 *SAC*, ¶¶ 42, 45, 53, 54.)

3 Local 29 argues that the claims must be dismissed because the SAC includes the exact same factual allegations that this Court deemed inadequate to support the claims in the FAC. (*MTD* [Doc. 36-1], 1:12–14.) In response, Terminalift contends that it "repled certain paragraphs of the Claims and the facts in the SAC to accord with the Court's rulings and based on discovered evidence." (*Opp.* [Doc. 38], ii:22-23.) Terminalift argues that the new factual allegations "show an agreement between Defendant and PMA/SSA Marine. . . ." (*Id.*, v:6–8.) In support of this contention, Terminalift points to paragraph 25's allegation that "in or about June 2011" Local 29 and SSA Marine entered into an agreement to induce Terminalift's windmill-related customers to hire only union contractors to unload their cargo at the Port. The paragraph then goes on to identify customers that SSA Marine allegedly contacted pursuant to the agreement. In paragraph 26, Terminalift contends that Local 29 and the Port agreed to bar Terminalift from bidding on work for the America's Cup Yacht Race.

17 The Court will evaluate Terminalift's two claims for relief separately.

19 **A. Claim 1- Conspiracy to Monopolize.**

20 Terminalift's first claim for relief fails to state a claim for violation of section 2 of the Sherman Act, but does state a claim for violation of section 1 with respect to the America's Cup Race.

23 To state a claim for violation of section 2 based on a conspiracy to monopolize, Terminalift must plead four elements: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury. Paladin Assocs., Inc. v Montana Power Co., 328 F.3d 1145, 1158 (9th 2003). "An allegation of conspiracy to create a shared monopoly does not plead a claim of conspiracy under section 2." Standfacts Credit

Services, Inc. v. Experian Information Solutions, Inc., 405 F.Supp.2d 1141, 1152 (C.D.Cal. 2005).  As explained by the D.C. district court:

> A monopoly arises when a single firm "controls all or the bulk of a product's output, and no other firm can enter the market, or expand output, at comparable costs." [Citation omitted.] The very phrase "shared monopoly" is paradoxical; when a small number of large sellers dominates a market, this typically is described as an oligopoly. [Citation omitted.] In enacting the prohibitions on monopolies, Congress was concerned about "the complete domination of a market by a *single* economic entity," and therefore did not include "shared monopolies" or oligopolies within the purview of Section 2. [Citation omitted.] As a result, "[o]ligopoly can, in some cases, violate Sections 1 and/or 3 of the Sherman Act, but *competitors*, by conspiring to maintain or create an oligopoly, do not run afoul of the Section 2 prohibitions against monopoly." [Citation omitted.] To the extent that plaintiffs have alleged a market structure in which [Defendants] each possess and seek to protect market power within the same markets, their monopoly claims based on an alleged agreement to monopolize must fail.

Oxbow Carbon & Minderals LLC v. Union Pacific R. Co., —F.Supp.2d—, 2013 WL 673778 (D.D.C. 2013).

Here, Terminalift alleges that Local 29 is conspiring with "Pacific Maritime Association members, including SSA," to monopolize the market.  (*SAC*, ¶ 38.) Because PMA members compete against each other, the alleged conspiracy would create a "shared monopoly" or oligopoly.  Such conduct is not a violation of section 2. Accordingly, the third claim for relief fails to state a claim for violation of section 2 of the Sherman Act.

Terminalift, however, contends that the first claim for relief also asserts a section 1 claim for unreasonable restraint of trade.  (*Opp*., vi:10–11.)  Local 29 responds that it did not have fair notice of this claim because the first claim for relief is titled "Conspiracy to Monopolize."  (*Reply* [Doc. 39], 2:4–8.)

Despite the title, the body of the claim clearly alleges that Local 29 entered into a conspiracy "in unreasonable restraint of trade and commerce . . . in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2." (*SAC*, ¶ 42.) Accordingly, the Court finds Local 29 was placed on notice that Terminalift is asserting a section 1

claim. However, the SAC's allegations only support a claim based on to the alleged conspiracy concerning the America's Cup Race.

To state a claim for violation of section 1, Terminalift must plead: (1) concerted activity involving more than one actor; (2) an unreasonable restraint of trade; and (3) an effect on interstate commerce. Tanaka v. Univ. of Southern Cal., 252 F.3d 1059, 1062 (9th Cir. 2001). Terminalift's SAC alleges two separate conspiracies or instances of concerted action.

The first involves the alleged June 2011 agreement between Local 29 and SSA Marine/PMA to persuade Terminalift's windmill-related customers to use only union signatory contractors to unload cargo. (SAC, ¶ 25.) According to the SAC, pursuant to this agreement, SSA Marine contacted Terminalift's customers and notified them that they "must exclusively use [Local 29] signatory labor for these cargo services . . . or there will be disruptions" to their work. (*Id.*)

As stated in the previous Dismissal Order, an allegation that an "agreement" was entered "might well be sufficient in conjunction with a more specific allegation — for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint." (*See* Order, 4:26–5:2, citing Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008).) Because there are no allegations in the SAC suggesting that the June 2011 agreement was in writing, the only reasonable inference is that the agreement was tacit. The Court must, therefore, determine if the SAC's allegations are sufficient to support inference of a tacit agreement.

In dismissing Terminalift's Sherman Act claims in the FAC, this Court found that the inference of a tacit agreement was unsupported because the FAC did not contain any "factual allegations regarding any meetings or communications between Local 29 and any alleged co-conspirator — whether a signatory contractor or one of Terminalift's customers — outside of the afternoon of April 12." (*Order*, 5:27–6:2.) Not only does the same problem persist in the SAC, but Terminalift's added allegation

that the tacit agreement was formed in June 2011 makes the claim more speculative and less plausible.

Similar to the FAC, there are no facts pled in the SAC that support the conclusory allegation that Local 29 and SSA Marine formed a tacit (or written) agreement in June 2011. The only factual allegations relating to this time frame involve two separate and independent incidents: Local 29's picketing in April 2011 and SSA Marine's communications with Terminalift's windmill-related customers after the alleged agreement was formed in June. But there remain no factual allegations connecting these two events. There are no allegations of any meetings, communications or contacts between Local 29 and SSA Marine on or before June 2011, nor are there allegations that SSA Marine participated or helped organize the April picketing.

Moreover, because Local 29's picketing occurred on April 12, 2011, two months before the alleged agreement with SSA Marine was formed, it is not reasonable to infer that the picketing was part of the agreement or in furtherance of a conspiracy. In short, based on the SAC's factual allegations, the only reasonable inference that can be drawn is that Local 29's picketing and SSA Marine's communications with Terminalift's customers were independent actions, and not part of an agreement or conspiracy. See Twombly, 550 U.S. at 556–57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

The second instance of concerted action alleged in the SAC involves Terminalift's allegation that the Port and Local 29 agreed to preclude Terminalift from bidding on the offload and loadout of cargo and containers for the America's Cup Race. (SAC, ¶ 26.) With respect to this claim, the SAC alleges that beginning in September 2011, Local 29 and the Port, among others, began meeting to discuss the logistical plan

to hold the race. (*Id.*, ¶ 26a.) As a result of these meetings, on October 13, 2011, America's Cup event coordinators were notified by the Port that they were barred from considering Terminalift's bid for the event. (*Id.*, ¶ 26b.) Because these allegations demonstrate concerted action, the Court finds Terminalift has stated a claim for violation of section 1 based solely on the America's Cup Race.

### B.  Third Claim - attempt to monopolize.

There are at least three deficiencies with Terminalift's claim for attempted monopolization.

To state a claim for attempted monopolization, Terminalift must plead: (1) a specific intent to monopolize, (2) predatory or anticompetitive conduct, and (3) a dangerous probability of success in achieving monopoly power. <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447, 456 (1993). To demonstrate that there is a dangerous probability that the defendant will achieve monopoly power, i.e., the ability to control prices or exclude competition, 'a plaintiff must show, among other things, that the defendant owns a dominant share of that market. <u>East Portland Imaging Ctr., P.C. v. Providence Health Sys.-Oregon</u>, 280 Fed.Appx. 584, 586 (9th Cir. 2008) (citing <u>Rebel Oil</u>, 51 F.3d at 1434).

As discussed above, the first problem with Terminalift's claim is that it is based on the theory of a shared monopoly or oligopoly. Like the first claim, the third claim for relief alleges a conspiracy involving Local 29 and "its signatory marine cargo handling service contractors . . . ." (SAC, ¶ 53.) Because section 2 does not cover oligopolies, Terminalift has failed to state a claim for attempted monopolization.

The second problem is that the SAC's allegations fail to establish a dangerous probability of success. Terminalift alleges that Local 29 is conspiring with the PMA member companies in an attempt to monopolize the market. (SAC, ¶ 53.) The SAC further alleges that the PMA member companies together "perform in excess of ninety per cent (90%) of marine cargo handling performed in the Relevant Market . . . ." (*Id.*,

¶ 29.)  But as Local 29's motion points out, the SAC fails to identify any other PMA member involved in the alleged conspiracy.  The only PMA member identified in the SAC is SSA Marine, and the only purported agreement is the June 2011 agreement between Local 29 and SSA Marine.  Accordingly, at best, the SAC's allegations suggest an attempt to monopolize the market for SSA Marine.  Because there is no allegation regarding SSA Marine's share of the market, Terminalift has failed to plead facts suggesting a dangerous probability of success.

Finally, unlike the first claim for relief, the Court finds that the third claim does not state a violation of section 1.  With respect to the America's Cup, there are no allegations in the third claim suggesting liability for that alleged conspiracy.  Instead, the third claim appears to focus on Local 29's picketing in April 2011 (SAC, ¶ 53), and the alleged loss of the windmill-related customers resulting from the purported June 2011 agreement (*id.*, ¶¶ 54–55).  And for the reasons discussed above, Terminalift has failed to state a section 1 claim based on Local 29's picketing, and the loss of the windmill-related customers (i.e., the alleged June 2011 agreement).[2]

//

//

---

[2] Terminalift also argues that Section 2 prohibits offenses that can be accomplished unilaterally.  (*Opp.*, vi:23–24.)  The point of this argument is unclear given that the SAC does not allege that Local 29 acted unilaterally.  The first claim is based on the allegation that "[f]rom at least as early as April 2011 . . . [Local 29] **and its conspirators** have entered into contracts, agreements, combinations, and/or conspiracies in unreasonable restraint of interstate trade . . . ." (SAC, ¶ 42, emphasis added.)  Similarly, the third claim alleges that Terminalift no longer performs work in the "relevant market because of the direct restraint and interference from [Local 29] **and their unnamed co-conspirators** who have entered into coercive agreements . . . ." (Id., ¶ 53, emphasis added.)  Indeed, Terminalift's opposition later admits that its section 2 claim is based on a conspiracy, not unilateral conduct: "Terminalift indeed alleges a conspiracy to monopolize here . . . ."  (*Opp.*, viii:14.)

Regardless, even if Terminalift's section 2 claim was based on unilateral conduct, the claim would fail because Local 29 is not one of Terminalift's competitors in the relevant market.  See Spanish Broadcasting Sys. of Fla. v. Clear Channel Communs., Inc. 376 F.3d 1065, 1075 (11th Cir. 2004) (affirming Rule 12(b)(6) dismissal of claim because defendant did not participate in the relevant market).

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Local 29's motion to dismiss, and **ORDERS** as follows:

1. The first claim for relief is **DISMISSED WITHOUT LEAVE TO AMEND** with respect to Terminalift's claim for violation of section 2 of the Sherman Act.

2. The first claim for relief is also **DISMISSED WITHOUT LEAVE TO AMEND** to the extent the claim for violation of section 1 of the Sherman Act is based on the June 2011 agreement, Local 29's picketing in April 2011, and Terminalift's loss of the windmill-related customers. The section 1 claim is not dismissed to the extent it is based on an alleged agreement, combination or conspiracy to bar Terminalift from bidding on the America's Cup Race.

3. The third claim for relief is **DISMISSED WITHOUT LEAVE TO AMEND** with respect to Terminalift's claims for violation of section 1 and 2 of the Sherman Act.

**IT IS SO ORDERED.**

DATED: May 17, 2013

Hon. Thomas J. Whelan
United States District Judge